UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS LIPP, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>MIXEDBREAD AI, INC.,<br><br>        Defendant. | Case No. 25-cv-08281-TSH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 17 |

## I. INTRODUCTION

Plaintiffs Julius Lipp and Julius Lipp Holding, UG bring claims against Defendant Mixedbread AI, Inc. arising from a co-founder dispute and alleged wrongful termination. Mixedbread moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to Plaintiffs' third (conversion) and fourth (Cal. Penal Code § 496) claims. ECF No. 17. Plaintiffs filed an Opposition (ECF No. 19) and Mixedbread filed a Reply (ECF No. 20). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the January 15, 2026 hearing. For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** Mixedbread's motion.[1]

## II. BACKGROUND

**A.   Factual Background**

Julius Lipp is a citizen of Germany and the sole owner and manager of Julius Lipp Holding, UG, a German limited liability company. Compl. ¶¶ 1-2, ECF No. 1. He is a software engineer and "product-focused technology leader." *Id.* ¶ 6. Plaintiffs allege that "[g]iven his

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 8, 11.

1  technical expertise in AI and software engineering, proven performance at leading technology
2  companies and entrepreneurial track record, Lipp had multiple career paths available to him—
3  including continued employment at established companies like Google or pursuing consulting
4  opportunities in the rapidly growing AI sector," but he instead "chose to forgo these other
5  opportunities to co-found Mixedbread, believing that his equity stake and role as a cofounder
6  would be protected." *Id.* ¶ 8.

7  Mixedbread is an artificial-intelligence research and engineering company that builds
8  large-scale retrieval systems. *Id.* ¶ 10. It is the joint creation of its two co-founders: Lipp and
9  Aamir Shakir. *Id.* ¶ 9. Mixedbread was incorporated on or around October 27, 2023, with Lipp
10 and Shakir appointed as its two Directors, Shakir elected as its Chief Executive Officer, and Lipp
11 elected as its Chief Technology Officer. *Id.*

12 On October 26, 2023, Mixedbread executed a Restricted Stock Purchase Agreement
13 (RSPA) with Lipp Holding, through which Lipp Holding purchased 4,500,000 shares of the
14 company's common stock. *Id.* ¶ 17. The agreement contains a repurchase option for Mixedbread,
15 but it is limited by a vesting schedule also contained in the RSPA which functions to release
16 shares from the ambit of the repurchase option on a rolling basis. *Id.* ¶ 18.

17 Plaintiffs allege Shakir "quickly proved incapable of executing on any vision for
18 Mixedbread," so at the end of 2024, Lipp "took decisive action to remedy the situation," providing
19 the leadership and technical skill that transformed Mixedbread from concept into execution. *Id.* ¶¶
20 13-14. Team members, including Shakir, "heaped praise" on Lipp during this period, and Shakir
21 became a strong advocate for the product direction. *Id.* ¶ 15. Lipp entered into an employment
22 agreement with Mixedbread effective May 28, 2025, which provides for Lipp's paid employment
23 with the company as its CTO. *Id.* ¶ 22. It also provides that Mixedbread may terminate Lipp only
24 "for Cause." *Id.*

25 Around June of 2025, Lipp became aware that Shakir and another Board member, Max
26 Claussen, "were engaging in a pattern of bad faith conduct designed to isolate and improperly oust
27 Lipp from Defendant and steal his shares." *Id.* ¶ 24. In early June 2025, Shakir "ambushed Lipp
28 and abruptly demanded that Lipp leave Mixedbread" in "brazen attempt by Shakir and the

Company to steal the fruit of [his] hard work and skill." *Id.* ¶¶ 26-27. Shakir and Claussen continued to pressure Lipp to leave, attempting "to extort Lipp by threatening to have Mixedbread cause the revocation of his US immigration visa unless he voluntarily agreed to leave the Company." *Id.* ¶ 29. When Lipp requested time to consult an attorney to advise him concerning a separation, Shakir and Claussen scheduled an immediate Board meeting, during which they purported to terminate Lipp's employment. *Id.* However, Shakir and Claussen "admitted that the Company lacked the 'Cause' required under the Employment Agreement . . . for a valid termination, and indeed wholly failed to identify any improper conduct attributable to Lipp." *Id.* Plaintiffs allege that "at the meeting Shakir and Claussen stated outright that their motivation in terminating Lipp's employment was to stop the ongoing release of Lipp Holding's shares from the Repurchase Option." *Id.* ¶ 30. Mixedbread subsequently asserted that Lipp had himself decided to leave to compete with it by forming another company. *Id.* ¶ 33. Mixedbread also accused Lipp of improperly disclosing Defendant's trade secrets and intellectual property. *Id.*

**B.     Procedural Background**

On September 29, 2025, Plaintiffs filed their complaint, alleging five causes of action against Mixedbread: (1) Breach of Contract (Employment Agreement), brought by Julius Lipp; (2) Breach of Contract (Restricted Stock Purchase Agreement), brought by Julius Lipp Holding, UG; (3) Conversion, brought by Julius Lipp Holding, UG; (4) Violation of California Penal Code § 496, brought by Julius Lipp Holding, UG; and (5) Declaratory Relief, brought by Julius Lipp Holding, UG. Compl. ¶¶ 40-71.

On December 11, 2025, Mixedbread filed the present motion.

### III.     LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted). Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the

3

legal sufficiency of the claims asserted in the complaint. *Id.* Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the time of filing"); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Judgment on the pleadings should thus be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

A district court generally may not consider materials outside the pleadings in deciding a motion under Rule 12(c), and if such materials are presented and not excluded, the motion must be treated as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). A district court may, however, consider the following materials without converting a Rule 12(c) motion to a Rule 56 motion: "(1) exhibits to the nonmoving party's pleading, (2) documents that are referred to in the non-moving party's pleading, or (3) facts that are included in materials that can be judicially noticed." *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007).

### IV.   DISCUSSION

**A.   Conversion**

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (cleaned up).

4

1    Plaintiffs allege Lipp Holding still holds a property interest in all 4,500,000 shares it
2    acquired through the RSPA. Compl. ¶ 52. They allege that by the time of the June 2025 Board
3    meeting, approximately 50% of the shares had been released from the repurchase option and the
4    remaining approximately 2,250,000 shares were also not subject to the repurchase option because,
5    under the terms of the RSPA, "Lipp Holding will forever be a 'Service Provider' not subject to
6    termination under the RSPA." *Id.* Plaintiffs allege Mixedbread converted Lipp Holding's interest
7    in its Mixedbread shares to the company's own use by, among other things: making the claim that
8    the purported termination of Lipp from Mixedbread would halt the release of the remaining
9    approximately 2,250,000 shares from the repurchase option. *Id.* ¶ 53. As a result, "Mixedbread
10   has wrongfully exerted dominion and control over the property of Lipp Holding; and has acted in
11   denial of, or inconsistent with, Lipp Holding's title or rights to that property, or in derogation,
12   exclusion, or defiance of Lipp Holding's rights to its property." *Id.* ¶ 55.

13   Mixedbread argues the conversion claim fails as a matter of law because it merely restates
14   the contract dispute. Mot. at 5. It argues that even if it "converted" the unvested shares by
15   asserting they were subject to repurchase under the RSPA, this alleges at most a breach of the
16   RSPA, not an independent tort. *Id.* Mixedbread argues the "economic loss rule" bars recovery in
17   tort "for negligently inflicted purely economic losses when the parties have entered into a
18   contract." *Id.* at 6. As such, Lipp Holding is limited to recovering economic damages under
19   contract law "and cannot expand their remedies to include tort damages unless the breach involves
20   physical damage, personal injury, or a violation of an independent legal duty." *Id.*

21   Plaintiffs counter that California Supreme Court precedent recognizes that a "tortious
22   breach of contract" may exist where accompanied by a traditional common law tort, such as fraud
23   or conversion, and that conversion is an intentional tort not barred by the economic loss rule at the
24   pleadings stage. Opp'n at 12-13.

25   "A plaintiff may not ordinarily recover for the tort of conversion 'for the breach of duties
26   that merely restate contractual obligations.'" *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047,
27   1058 (N.D. Cal. 2021) (quoting *Aas v. Superior Ct.*, 24 Cal. 4th 627, 643 (2000), *superseded by*
28   *statute on other grounds as recognized in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070

United States District Court
Northern District of California

1   (2003)). California's economic loss rule functions to maintain separation between contract and
2   tort law by generally limiting a party "to recover in contract for purely economic loss due to
3   disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual
4   promise" from tortious conduct. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979,
5   988–89 (2004). Thus, the economic loss rule bars recovery in tort for breach of a contract duty
6   "unless two conditions are satisfied. A plaintiff must first demonstrate the defendant's injury-
7   causing conduct violated a duty that is independent of the duties and rights assumed by the parties
8   when they entered the contract. Second, the defendant's conduct must have caused injury to
9   persons or property that was not reasonably contemplated by the parties when the contract was
10  formed." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 20–21 (2024).

11  "For courts in the Ninth Circuit, whether the economic loss rule bars a conversion claim
12  depends on 'whether the ownership interest that formed the basis for the conversion claim
13  preexisted the contract or arises from the contract.'" *GMC Semitech Co. v. Cap. Asset Exch. &*
14  *Trading, LLC*, 2025 WL 1236677, at *4 (N.D. Cal. Apr. 29, 2025) (quoting *Markowitz v.*
15  *JPMorgan Chase Bank, N.A.*, 2024 WL 5203062, at *5 (C.D. Cal. Dec. 23, 2024)). "If the
16  property right on which a plaintiff bases a claim for conversion was created by the contract, rather
17  than independent of the contract, the economic loss rule bars the claim." *Id*. (citing *Markowitz*,
18  2024 WL 5203062, at *5; *Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*, 2007 WL 1795695, at
19  *3 (N.D. Cal. June 20, 2007); *Tsai v. Wang*, 2017 WL 2587929, at *8–9 (N.D. Cal. June 14,
20  2017); *Zeichner v. Nord Sec. Inc.*, 2024 WL 4951261, at *8 (N.D. Cal. Dec. 2, 2024)).

21  Here, Plaintiffs' claim Mixedbread "converted" the unvested shares by asserting they were
22  subject to repurchase under the RSPA. That allegation, even if true, alleges at most a breach of
23  the RSPA, not an independent tort. First, the RSPA defines the full scope of the contractual
24  agreement and provides a remedy for breach of the release of the remaining approximately
25  2,250,000 shares from the repurchase option. There are no allegations of a "risk of harm beyond
26  the parties' reasonable contemplation when they entered into the contract" and there is no
27  allegation of "injury to the plaintiff's person or from physical harm to the plaintiff's property" to
28  justify action in tort. *Rattagan*, 17 Cal. 5th at 23 (quoting Rest. 3d Torts, Liability for Economic

6

Harm (June 2020) § 2.). Indeed, "[i]f every negligent breach of a contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies." *Id*. at 31 (citations omitted). Plaintiffs fail to allege Lipp Holdings was "exposed to a risk of harm beyond the reasonable contemplation of the parties when they entered into the contract." *Id*. at 26 n.7. As alleged, the risk of harm—the value of the shares—was reasonably contemplated by the parties at the outset of the contract, and Plaintiffs' complaint fails to identify any unanticipated harm resulting from an independent tort duty outside the performance of the contract.

Second, there is no independent tort duty to refrain from the alleged conduct, as the motive for Mixedbread's alleged breach is immaterial. "[T]he law eschews inquiry into a breaching party's motives; whether acting in good faith or bad faith, a party that breaches a commercial contract must pay only contract damages." *Id.* at 35 (quoting *Robinson*, 34 Cal. 4th at 995). Regardless of Mixedbread's motive, the allegations make clear the factual basis for the conversion claim is the repurchase option shares.

In sum, because Lipp Holding's alleged ownership interest in the shares was created by the RSPA, and the damages Plaintiffs seek are related to those shares, the conversion claim is barred by the economic loss rule. *See Dobest Semiconductor Tech. (Suzhou) Co. v. Cap. Asset Exch. & Trading, LLC*, 2025 WL 3254933, at *5 (N.D. Cal. Apr. 25, 2025) (dismissing conversion claim where plaintiff's alleged property right arose out of its agreements with defendant "because Plaintiff alleges it was entitled to possession as a result of its payments, which were made under and governed by the agreements."); *Tsai*, 2017 WL 2587929, at *9 (dismissing conversion claim based on defendant's alleged duties under the contract where the amount of damages sought was based on the parties' agreement). Accordingly, the Court **GRANTS** Mixedbread's motion as to Plaintiffs' conversion claim. The claim is dismissed with leave to amend, but only if Plaintiffs can plausibly allege Mixedbread's conduct violated a duty that is independent of the duties and rights assumed by the parties when they entered the contract, and that Mixedbread's conduct caused an injury that was not reasonably contemplated by the parties when the contract was formed.

### B.     California Penal Code § 496

Section 496(a) states: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained" is subject to imprisonment.  Section 496(c) permits any person injured by a violation to "bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."  A criminal conviction is not necessary for civil liability to attach.  *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019), *as modified* (May 10, 2019).

Under California law, a plaintiff bringing a civil theft claim must allege that: (1) "property was stolen or obtained in a manner constituting theft"; (2) "the defendant knew the property was so stolen or obtained"; and (3) "the defendant received or had possession of the stolen property."  *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 242 (9th Cir. 2021) (quoting *Switzer*, 35 Cal. App. 5th at 121).  "A claim for civil theft in California ultimately rests on whether a plaintiff establishes that a defendant committed theft as defined by California Penal Code section 484."  *GEC US 1 LLC v. Frontier Renewables, LLC*, 2016 WL 4677585, at *9 (N.D. Cal. Sept. 7, 2016) (citing *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1049 (2013)).  Under that provision, a person is guilty of theft where he or she: (1) "feloniously steal[s], take[s], carr[ies], lead[s], or drive[s] away the personal property of another;" (2) "fraudulently appropriate[s] property which has been entrusted to him or her;" or (3) "knowingly and designedly, by any false or fraudulent representation or pretense, defraud[s] any other person of money, labor or real or personal property."  Cal. Penal Code § 484.

Plaintiffs allege Mixedbread, "by asserting that the purported termination of Lipp caused the release of Lipp Holding's shares from the Repurchase Option to abate, did feloniously steal, take, carry, lead, or drive away the personal property of Lipp Holding, i.e., the remaining approximately 2,250,000 shares that had not already been released from the Repurchase Option."  Compl. ¶ 62.  They allege "Mixedbread had no legal right to claim that the purported termination of Lipp would halt the release of these shares from the Repurchase Option, and so lacked a good faith claim of right to the shares."  *Id.* ¶ 64.

8

Mixedbread argues Plaintiffs' section 496 claim fails because "California courts have consistently held that Penal Code § 496 does not apply to disputes grounded in contracts." Mot. at 8. It argues the statute "requires the property at issue to have been stolen, and its application to contract disputes would lead to adverse consequences contrary to legislative intent." *Id.* Mixedbread also argues the claim further fails because a defendant cannot be both the alleged thief and the receiver of the stolen property under California law. *Id.* at 8-9.

Plaintiffs respond they have stated a valid claim because the California Supreme Court has held that a civil action under section 496 is available in a business setting where the plaintiff advanced claims for breach of a partnership agreement and breach of an oral contract. Opp'n at 15-16. They further argue the same defendant can be found in the civil context to have both obtained and received the same property within the meaning of section 496. *Id.* at 17-18.

### 1. Plaintiff's Section 496 Claim is Not Precluded

In support of its argument that section 496 does not apply to disputes grounded in contracts, Mixedbread cited one case in its motion: *Lacagnina v. Comprehend Systems, Inc.*, 25 Cal. App. 5th 955, 972 (2018). In *Lacagnina*, the court expressed concern that interpreting section 496(c) to apply to contract disputes would lead to significant adverse consequences, such as the proliferation of treble damages claims in routine commercial disputes, stating: "If every plaintiff in an employment or contract dispute could also seek treble damages and attorneys' fees on the ground that the defendant received 'stolen property,' such claims would become the rule rather than the exception, parties would more frequently assert claims for 'theft' in run-of-the-mill commercial disputes, and cases would be harder to settle." *Id.* The court did not "believe the Legislature contemplated, much less intended, those consequences when it enacted section 496, subdivision (c)." *Id*.

However, on July 21, 2022, the California Supreme Court issued its opinion in *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal. 5th 333 (2022). In *Siry*, the Court addressed whether a trial court may award treble damages and attorney's fees under Penal Code section 496(c) in a case involving fraudulent diversion of a partnership's cash distributions. The Court answered in the affirmative, noting that although section 496 was the result of a bill intended to eliminate

9

markets for stolen property by reducing the incentive to hijack cargo from trucks and other common carriers, the penal code section permitted recovery "when property has been obtained in any manner constituting theft." *Id*. at 348, 361.  In so finding, the Court examined and declined to follow *Lacagnina* on its view that section 496 should not be applied in the business setting due to "policy concerns." *Id.* at 366-67.

After *Siry* California Courts have permitted plaintiffs to allege both section 496 and breach of contract claims where the dispute centered on contractual claims.  *See, e.g., Johnson v. Connie, LLC*, 113 Cal. App. 5th 850, 855 (2025) (permitting plaintiff to bring both breach of contract and section 496 claims based on allegations that defendants illegally increased rent payments). District courts have also applied *Siry*'s pleading standard in civil theft cases.  *See Woods v. Merkelbach*, 2024 WL 1624171, at *1, 8 (E.D. Cal. Apr. 15, 2024) (denying motion to dismiss where plaintiff alleged both breach of contract and a section 496 violation for failure to pay commissions); *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023) ("The Court finds, taking the allegations as true as it must at this stage, that Plaintiff plausibly alleges theft of funds and assets from a joint venture in a deliberate and calculated manner that supports an inference of the required intent under § 496."); *McCraner v. Wells Fargo & Co.*, 2023 WL 2728719, at *8 (S.D. Cal. Mar. 30, 2023) ("[T]he FAC alleges that the money [the defendant] received . . . was obtained through fraud and false pretenses, [ ] which is sufficient to allege a theft within the meaning of Penal Code § 496."); *Injective Labs Inc. v. Wang*, 2023 WL 3318477, at *9 (D. Del. May 9, 2023) (The "allegations are sufficient to state a claim of civil theft" because "purposeful theft, misappropriation, and embezzlement constitute more than a claim of an ordinary commercial default that can be addressed through a breach of contract claim.") (cleaned up); *see also Sinclair v. Agile Web Studios*, 2025 WL 2094009, at *9, 11 (N.D. Cal. June 3, 2025), *report and recommendation adopted*, 2025 WL 2094002 (N.D. Cal. July 24, 2025) (granting judgment in favor of plaintiff on section 496 and breach of contract claims).

In its reply, Mixedbread argues the complaint fails to allege the requisite criminal intent to support liability under section 496.  Reply at 6-7 ("A defendant's good faith but erroneous belief in the truth of his or her misrepresentation or that the defendant has a right or claim to the property

1  taken 'negates the felonious intent necessary for conviction of theft.'") (quoting *Siry*, 13 Cal. 5th
2  at 368). However, Plaintiffs allege Mixedbread "did feloniously steal, take, carry, lead, or drive
3  away the personal property of Lipp Holding, i.e., the remaining approximately 2,250,000 shares
4  that had not already been released from the Repurchase Option," and that Mixedbread lacked a
5  good faith claim of right to the shares. Compl. ¶¶ 62, 64. Accepting all Plaintiffs' factual
6  allegations as true and construing the pleadings in the light most favorable to them, the Court finds
7  Plaintiffs have stated a plausible claim under section 496.

### 2. Defendant's Objection that it Cannot be Both the Thief and Receiver of the Same Property is Invalid

Mixedbread also argues Plaintiffs' section 496 claim fails because they allege Mixedbread itself "stole" the property, but "it cannot also have received it from itself." Mot. at 9. However, in support of its argument, Mixedbread cites only criminal cases. *Id.* (citing *People v. Ceja*, 49 Cal. 4th 1 (2010); *People v. Garza*, 35 Cal. 4th 866 (2005); *People v. Allen*, 21 Cal. 4th 846 (1999)). California courts have rejected this same argument in the civil context. For example, in *Bell*, a case in which the court affirmed a civil judgment against a defendant under section 496 for obtaining funds through false pretenses, the defendant "argue[d] that under section 496(a), he cannot be liable for both theft and receiving stolen property." 212 Cal. App. 4th at 1049. The court acknowledged a limitation in criminal law precluding conviction for both stealing and receiving the same property, but it held this limitation is inapplicable to "civil liability under section 496(c)." *Id.* ("Were that principle applied to Feibush's civil liability under section 496(c), he would not be liable for damages under the breach of contract and fraud causes of action and treble damages under the statute. The evidence established that Feibush violated section 496(a) not only by receiving property from Bell by false pretense, but also by withholding that property when she asked for it back.").

Further, Mixedbread's argument is one *Siry* explicitly rejects, holding that any assertion that for section 496 to apply, property must "have already been stolen at the time the defendant allegedly" engaged in fraudulent conduct "appears to be erroneous" and "inconsistent with [the statutory language]." *Siry*, 13 Cal. 5th at 353 (cleaned up) (quoting *Lacagnina*, 25 Cal. App. 5th

at 971); *see also id.* at n.15 (noting that in *Grouse River Outfitters*, 848 F. App'x at 242–43, the Ninth Circuit likewise "disapproved [] a reading of the statute" to require that property "must already have the character of having been stolen" before coming into the defendant's hands). Like *Bell*, the *Siry* Court held that on the facts before it, the same defendants could properly be found in the civil context to have both "obtained" and "received[d]" the same property within the meaning of section 496. *Id.* at 361; *see also Johnson*, 113 Cal. App. 5th at 852–54 (defendant improperly obtained the funds in the first instance); *Sinclair*, 2025 WL 2094009, at *12 (granting judgment on section 496 claim where defendants "obtained the plaintiffs' money, websites, and applications through fraud" and thus "received the property"); *Woods*, 2024 WL 1624171, at *1, 8 (denying motion to dismiss section 496 claim where defendant wrongfully failed to pay promised commissions). As such, the Court finds Lipp Holding's claim under section 496 may proceed. The Court therefore **DENIES** Mixedbread's motion as to this claim.

### V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** Mixedbread's motion. If they choose to do so, Plaintiffs may file an amended complaint by February 6, 2026.

**IT IS SO ORDERED.**

Dated: January 6, 2026

THOMAS S. HIXSON
United States Magistrate Judge